❏ Original ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 24-878M(NJ) |
| Devices A, B, C and D, currently in law | ) |
| enforcement possession, as further described | ) |
| in Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7/9/2024_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued: 6/25/2024 @ 11:23 a.m._____

_Judge's signature_

City and state:  Milwaukee, WI_____         Honorable Nancy Joseph, U.S. Magistrate Judge
_Printed name and title_

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Items to Be Searched

The property to be searched is described as follows:

a.  A TCL smart phone model T602DL TracFone (IMEI 016053008614928) which was located in the rear passenger's seat map pocket. The cellular telephone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491-1, hereinafter referred to as "Device A";

b.  A blue Motorola Moto G Play smartphone (IMEI 355344820891839) which was located in the center console tray of the vehicle. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 2, hereinafter referred to as "Device B";

c.  A black Samsung smart phone with crack screen (IMEI number 3558192160283280). This cellular phone was located in PICKENS's hand at the time of the stop. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 3, hereinafter referred to as "Device C"; and

d.  A black Samsung smart phone with no case (IMEI 352215332279304). This cellular telephone was located in PICKENS's hand at the time of the stop. This cellular telephone is currently being held at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 4, hereinafter referred to as "Device D".

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

## Items to Be Seized

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g) and 924(c); and Title 21, United States Code, Section 841(a)(1), and 846 that involve PICKENS, his associates, co-conspirators, sources of supply, and identify the manner and means PICKENS used or uses to distribute narcotics and to possess firearms including, but not limited to:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs or firearms and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording PICKENS schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records;

    f. any information related to PICKENSS purchase, receipt, or possession of firearms during the time he has been prohibited by federal law from possessing the same;

    g. photographs and/or videos depicting possession of drugs or firearms; and

    h. records of internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Devices A, B, C and D, currently in law enforcement<br>possession, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No. 24__878M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g) & 924(c);<br>21 U.S.C. §§ 841(a)(1) & 846 | Felon in possession of a firearm and Use of firearm in relation to a crime of<br>violence or narcotics trafficking; Possession with the intent to distribute, and<br>Conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony T. Winkler, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: __6/25/2024__

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, Anthony T. Winkler, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—more specifically four electronic devices—which are currently in law enforcement possession, and the extraction from those devices of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been since March of 2016. I have been assigned to the Eastern District of Wisconsin since August of 2020. Prior to being employed as a Special Agent with the ATF, I was employed as a U.S. Secret Service Counter Sniper Technician / Uniformed Division Officer for approximately eleven (11) years. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony offenses.

3.     As an ATF Special Agent, I have had formal training in the investigation of federal firearms violations. I have also participated in the investigation of narcotics-related offenses, which have included the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. Through my training and experience, I have become aware of the methods used by drug traffickers to manufacture, smuggle, safeguard, and

1

distribute narcotics, and to collect and launder trafficking-derived proceeds. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, records, or receipts pertaining to such, as well as electronic devices.

4.     In the course of my employment and experience, I have also become aware of techniques and practices used by drug traffickers to avoid detection by law enforcement. Examples of those techniques include the use of multiple locations to conduct narcotics related activities, the use of counter-surveillance, the use of mobile telephones, voice mail, texting, instant messaging, email, and the compartmentalized use of multiple telephones to further their criminal activity. I also know from my training and experience that those involved in narcotics trafficking often use their cars to conduct their business as cars can easily move form one place to another, are filled with locations where narcotics, money, and packaging materials can be kept, and can be used to hide digital scales needed to weigh out narcotics for sale.

5.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched is described as follows:

a. A TCL smart phone model T602DL TracFone (IMEI 016053008614928) which was located in the passenger's seat map pocket. The cellular telephone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 - 1, hereinafter referred to as "Device A";

b. A blue Motorola Moto G Play smartphone (IMEI 355344820891839) which was located in the center console tray of the vehicle. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 2, hereinafter referred to as "Device B";

c. A black Samsung smart phone with crack screen (IMEI number 3558192160283280). This cellular phone was located in PICKENS's hand at the time of the stop. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 3, hereinafter referred to as "Device C"; and

d. A black Samsung smart phone with no case (IMEI 352215332279304). This cellular telephone was also observed in PICKENS's hand at the time of the stop. This cellular telephone is currently being held at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 4, hereinafter referred to as "Device D."

7. The applied-for warrant would authorize the forensic examination of the above identified Devices for the purpose of identifying electronically stored data more particularly described in Attachment B.

3

**PROBABLE CAUSE**

8.      I am investigating Johnny Lavon Pickens and others regarding violations of Title 18, United States Code, Sections 922(g) (felon in possession of a firearm); 924(c) (use of firearm in relation to a crime of violence or narcotics trafficking); Title 21, United States Code, Section 841(a)(1), illegal distribution of narcotics; and 846 (conspiracy to possess and/or distribute narcotics.) My investigation may involve PICKENS, his associates, his co-conspirators, his sources of supply, and identify the manner and means PICKENS used to distribute narcotics. I know from my investigation that PICKENS is a convicted felon.

9.       On April 2, 2024, at approximately 9:20 PM, a West Allis Police Department (WAPD) Patrol Officer observed near the intersection of 58th St. and Greenfield Ave. in West Allis WI a car that had excessive tint on the windows. A traffic stop was made of the car due to the excessive tint on the windows.  The car was a white Hyundai Sonata bearing Wisconsin registration AWH1756. The Officer approached the car and started to speak with the driver who was seated in the driver's seat. At the time, the officer noted that driver had two cell phones in his hands. One was a black Samsung smart phone with crack screen and having the IMEI number 3558192160283280. This cell phone is identified as Device C herein.

10.     The other cell phone observed in the driver's hands was black Samsung smart phone with no case and having the MEI number 352215332279304. This cell phone is identified as Device D herein.

11.     Upon approaching the car, the officer noted that he could not see if anyone else was in the back seat of the car and asked the driver to lower the rear driver window. As the window was being lowered, the officer saw a large sheet of tint come slightly off the inside of

4

the rear window. The officer, while speaking to the driver also observed small pieces of a white chunky/powdery substance, which the officer recognized, based on his training and experience, appeared to be crack cocaine on the passenger's side floorboard of the vehicle. The officer also observed the same type of substance on the driver's black pants.

12.     The officer asked for the driver's identification and then entered the vehicle information and the driver's name into the computer he had in his squad. The police computer in the car revealed that the driver's name was Johnny Lavon PICKENS and that he was on parole. The officer requested additional police units to support him during the traffic stop. Upon the arrival of additional police units, the officer asked PICKENS to exit the vehicle which, after multiple requests, PICKENS did so. The officer decided to handcuff PICKENS for the officer's safety. The officer explained to PICKENS that he saw what he believed to be cocaine residue on PICKENS' pants and PICKENS' car.

13.     Once additional officers arrived, PICKENS's person was searched. Located inside PICKENS pants pockets were a total of $715.00 US Dollars in small denominations as well as a digital scale with residue officers recognized as appearing to be cocaine. Officers then conducted a search of the vehicle.

14.     Under the driver's seat the officers located a loaded Taurus G2C, 9mm pistol, bearing serial number 1C042176; 0.64 grams of crack cocaine on the driver's side floorboard. I know from my training and experience that Taurus firearms are made in Brazil and that the firearm would have had to travel in interstate and internationally before PICKENS possessed it.

5

15. Also found in the car was 0.06 grams of crack cocaine which was recovered from the driver's seat. They also saw and recovered two cell phones. One was a TCL smart phone model T602DL TracFone having an IMEI number 016053008614928 which was located in the rear passenger's seat map pocket. This cell phone is identified as Device A in this affidavit. I know from my training and experience that Taurus firearms are made in Brazil and that the firearm would have had to travel in interstate and internationally before PICKENS possessed it.

16. The second phone recovered from the car was a blue Motorola Moto G Play smartphone having an IMEI number 355344820891839 which was located in the center console tray of the vehicle. This cell phone is identified as Device B in this affidavit.

17. A search of law enforcement databases showed the firearm recovered had been reported stolen in Milwaukee Police Department report 220010070 on December 31, 2021. PICKENS was then arrested and transported to the West Allis Police Station for booking. During a secondary search performed on PICKENS, Officers located a large baggie containing multiple types of narcotics which were all individually wrapped. Those narcotics include one baggie containing 10 Alprazolam pills; one baggie containing 7.49 grams of cocaine; one baggie containing 13.46 grams of crack cocaine; and one baggie containing 20.15 grams of heroin. I know from my training and experience this amount of narcotics is consistent with distribution amounts of narcotics. Based on my training and experience, the circumstances outlined above are indicative of possession of controlled substances for the purpose of drug trafficking and distribution.

18.     I also know from my training and experience that drug dealers often possess firearms to protect themselves, their product, and their profits. Street-level drug dealers also commonly use cellular phones, including smartphones, to maintain contacts, arrange transactions with their sources and customers, and to assist them in finding addresses where they need to either pick up or deliver narcotics. I also know from my training and experience that drug dealers often possess and use multiple electronic devices in an effort to compartmentalize their illegal activity and/or avoid law enforcement detection.

19.     In my experience, it is common for cell phones belonging to suspects who possess illicit drugs and firearms to contain photographs and depictions, descriptions, or discussions pertaining to their use, possession, or distribution of narcotics. I also know, from my experience and training that people generally continue to hold important information and images in their cell phones or other electronically stored information indefinitely in their cell phones unless and until the information is intentionally deleted. I therefore respectfully seek a warrant to search the Devices for records and information of this sort, including evidence bearing on PICKENS unlawful possession and distribution of controlled substances and a firearm.

20.     The Devices are currently in the lawful possession of the West Allis Police Department, which seized and has held the Devices as evidence for its investigation into PICKENS. The Devices are currently in storage at West Allis Police Department 11301 W Lincoln Ave. West Allis, WI.  In my training and experience, I know that Devices such as the ones I seek to search can been stored in a manner in which their contents are, to the extent

7

material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the West Allis Police Department.

TECHNICAL TERMS

21.    Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars;  and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

     b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain important digital data, including data unrelated to photographs or videos but which might relate to locations and other relevant information.

     c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio,

video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games. Most electronic devices can perform as a portable media player.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision. Most electronic devices are equipped with GPS capabilities and can therefore provide location information.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

9

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Most electronic devices are able to connect to the internet and will use IP addresses.

22.  Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices, where the device traveled, and other relevant information.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

10

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

11

many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27. I respectfully submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

# ATTACHMENT A

## Items to Be Searched

The property to be searched is described as follows:

a.   A TCL smart phone model T602DL TracFone (IMEI 016053008614928) which was located in the rear passenger's seat map pocket. The cellular telephone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491-1, hereinafter referred to as "Device A";

b.   A blue Motorola Moto G Play smartphone (IMEI 355344820891839) which was located in the center console tray of the vehicle. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 2, hereinafter referred to as "Device B";

c.   A black Samsung smart phone with crack screen (IMEI number 3558192160283280). This cellular phone was located in PICKENS's hand at the time of the stop. This cellular phone is currently located at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 3, hereinafter referred to as "Device C"; and

d.   A black Samsung smart phone with no case (IMEI 352215332279304). This cellular telephone was located in PICKENS's hand at the time of the stop. This cellular telephone is currently being held at the West Allis Police Department 11301 W. Lincoln Ave., West Allis Wisconsin and is assigned item number 24-001491 – 4, hereinafter referred to as "Device D".

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

1

**<u>ATTACHMENT B</u>**

**Items to Be Seized**

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 922(g) and 924(c); and Title 21, United States Code, Section 841(a)(1), and 846 that involve PICKENS, his associates, co-conspirators, sources of supply, and identify the manner and means PICKENS used or uses to distribute narcotics and to possess firearms including, but not limited to:

      a.  lists of customers and related identifying information;

      b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      c.  any information related to sources of drugs or firearms and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

      d.  any information recording PICKENS schedule or travel;

      e.  all bank records, checks, credit card bills, account information, and other financial records;

      f.  any information related to PICKENSS purchase, receipt, or possession of firearms during the time he has been prohibited by federal law from possessing the same;

      g.  photographs and/or videos depicting possession of drugs or firearms; and

      h.  records of internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.